**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**(Eastern Division)**

| | |
|---|---|
| In re: ) | |
| ) | Chapter 7 |
| PHILIP I. STEPANIAN, ) | |
| ) | Case No. 15-10780-FJB |
| Debtor. ) | |
| ) | |
| ) | |
| WILBUR J. BABIN, ) | |
| Trustee-in-Bankruptcy, et al, ) | |
| Plaintiffs, ) | |
| v. ) | Adv. Proc. No. 15-01139-FJB |
| ) | |
| PHILIP I. STEPANIAN, ) | |
| Defendant. ) | |

**DEBTOR'S MOTION TO DISMISS COMPLAINT**

Pursuant to Rules 8, 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, made applicable by Fed. R. Bankr. P. 7008, 7009 and 7012, the within debtor and defendant in the above-captioned adversary ("Adversary"), Philip I. Stepanian ("Debtor"), by his attorneys, hereby moves to dismiss the complaint filed in the Adversary ("Complaint") in its entirety with prejudice.

As grounds therefor and as set forth more fully below, (i) the Complaint, permeated by vague allegations of fraud and deceit, fails to satisfy the particularity pleading requirements of Rule 9(b); (ii) the Complaint fails in numerous respects to adequately and plausibly allege the elements of its various causes of action; and (iii) the allegations are largely conclusory in nature and lacking in the factual specifics required by Rule 8. Finally, independent of these reasons for

1849811v2/19892-2

dismissing the Complaint, the Complaint should be dismissed as to all Plaintiffs other than the Plaintiff-trustee and Plaintiff-lawyers for lack of standing.

In view of the deficient nature of the allegations and assertions of causes of action as discussed below, the Complaint should be dismissed in its entirety and with prejudice.

### Summary of Complaint

1. The Complaint arises out of certain business dealings between and among an affiliate of the Debtor and certain Plaintiffs, consisting of the so-called "Band" and "Band Members", and litigation among them following a termination of their business relationship. The business relationship was allegedly defined by a certain management agreement ("Management Agreement") which Plaintiffs did not attach to the Complaint. Complaint, ¶5. According to the Complaint, however, the Debtor was not a party to the Management Agreement though he allegedly owned and controlled the management company that was a party, Highsteppin Productions, LLC ("Highsteppin"). Id., ¶¶2, 5.

2. The events that gave rise to Plaintiffs' substantive claims all occurred during the period 2006, when the Management Agreement was executed, to 2009, when the Management Agreement was terminated. Id., ¶¶5-10. Following termination of the Management Agreement, the parties were embroiled in litigation. The litigation was allegedly initiated by Highsteppin in the Massachusetts Federal District Court. Id., ¶¶10-12. The defendant Band and Band Members filed counterclaims, then filed chapter 7 in the Louisiana Bankruptcy Court, after which the pending litigation was removed to Louisiana for trial. Id. The Debtor was named as a third-party defendant by the Band and Band Members. Id., ¶11.

1849811v2/19892-2

3. The Complaint alleges that as a result of the litigation in the Louisiana Bankruptcy Court, the Plaintiff-trustee and his lawyers were awarded $1,828,587.51 in legal fees against Highsteppin. Id., ¶17.

4. The Complaint alleges that the Louisiana Bankruptcy Court found that Highsteppin willfully violated M.G.L., ch. 93A, committed "multiple breaches" of the Management Agreement, and "breached its fiduciary duties imposed by Massachusetts law." Id., ¶13. The Complaint does not, however, identify any actual damage suffered by any of the Plaintiffs on account of such violations, nor that the Louisiana Bankruptcy Court found or awarded any. Indeed, to the extent the Plaintiffs are relying on the findings of the Louisiana Bankruptcy Court, it appears from the Complaint that there were no damages.

5. The only indebtedness due to Plaintiffs alleged in the Complaint is the award of legal fees to the Plaintiff-trustee and his counsel against Highsteppin.

6. The Complaint asserts generally that the Debtor was a fiduciary to the Band and Band Members arising out of Highsteppin's management responsibilities under the Management Agreement and Massachusetts law. It alleges that this fiduciary relationship is the source of the Debtor's obligations to provide full disclosure, to provide a full accounting of receipts and disbursements, to avoid conflicts of interest and not to commingle funds. Id., ¶¶7-8.

7. The Complaint alleges that the Debtor breached his fiduciary duties by not making full disclosure, by providing false accountings, engaging in conflicts of interest and commingling funds. E.g., Id., ¶15.

8. The Complaint asserts that the Debtor caused Highsteppin to commingle funds belonging to the Band and Band Members with funds belonging to Highsteppin, and that the Debtor created a "separate set of books" and maintained "false, inaccurate, and misleading

3

'accountings'." Complaint, ¶20. The Complaint alleges this "made it impossible to determine the extent of those assets rightfully the property of the Band and Band Members were improperly used by Highsteppin and Stepanian [sic]" Id. The Complaint alleges that such acts "constitute concealment, destruction, mutilation, falsification and/or failure to keep or preserve recorded information, including books and documents, records and papers, from which Stepanian's financial condition or business transactions might be ascertained." Id., ¶22.

9.  The Complaint does not allege facts or explain how it can be reasonably inferred from any of the foregoing that the *Debtor's* financial condition cannot be ascertained. Rather, it is evident from the facts alleged in the Complaint that Highsteppin is at least virtually defunct and insolvent, and that the Debtor's interest in Highsteppin is of no value. Thus, from the Complaint itself, the Debtor's financial condition in regard to Highsteppin seems ascertainable: the Debtor's interest in Highsteppin is worth $0.

10. The Complaint further alleges more generally that the Debtor obtained money and property from the Plaintiffs by "false pretenses, false representations, and/or actual fraud." Complaint, ¶26. Elsewhere, the Complaint alleges that the Debtor made false representations concerning his experience, failed to disclose conflicts and diverted assets that were the property of the Band and Band Members, and similar conclusory allegations of fraud. Id., ¶15. As discussed in further detail below, the Complaint fails to identify a single instance of any such alleged fraudulent misrepresentations. Nor does the Complaint identify any particular Band Members to whom such representations were made or any indebtedness or harm arising therefrom.

11. The Complaint asserts that the Debtor used Highsteppin as his "alter ego" but, other than vague references to commingling funds, does not allege any facts giving rise to an

4

1849811v2/19892-2

alter ego theory under Massachusetts law, or otherwise tie such alter ego to grounds for the denial of discharge or dischargeability of any particular debt. Id., ¶14.

12. The Complaint further alleges that the Debtor "is jointly and severally liable for the claims that arose between the Creditors and Highsteppin", apparently on the basis that the Debtor personally committed a tort or breached a fiduciary duty. Id., ¶18.

13. The Complaint does not identify any debt incurred or damage suffered by the Plaintiffs as a result of any conduct of the Debtor (or Highsteppin for that matter). The sole "damage" identified by the Complaint was the award of legal fees against Highsteppin arising from litigation in the Louisiana Bankruptcy Court. Even if the Plaintiffs conceive of a legal theory according to which the Debtor was or should be co-liable with Highsteppin for such legal fees, the Plaintiffs have not alleged the factual basis for such theory nor have the Plaintiffs alleged facts showing that the legal fee award was damage occasioned by the allegedly fraudulent conduct of the Debtor, or that it is a liability to any of the Plaintiffs other than the Plaintiff-trustee and his counsel.

## ARGUMENT

**I. The Complaint Fails to Plead the Dischargeability Counts with Sufficient Particularity and/or Fails to Allege Facts Comprising Grounds to Except Any Identifiable Debt from Discharge.**

    **A. Count II – Denial of Discharge of Debt Pursuant to Section 523(a)(2)(A) -- Fails to Plead Fraud with Particularity or Allege any Damages Arising from any Alleged Fraud.**

14. Count II of the Complaint asserts that the Debtor's alleged indebtedness to Plaintiffs of $1,828,587.51 should be denied pursuant to Section 523(a)(2)(A). Count II repeats the generalized and vague allegations of fraud and deceit, failure to disclose conflicts, commingling of funds, creation of separate books of account "with the intent to deceive the Band

5

and Band Members," "diversion of the Band's and Band Members' income into Highsteppin's account," and "his submission of false, inaccurate, and misleading 'accountings' and financial documents." Complaint ¶25. The factual allegations supporting Count II are woefully inadequate.

15. Count II is essentially a count for fraud; therefore, Plaintiffs must meet the particularity pleading standards of Fed. R. Civ. P. 9(b) which is incorporated by reference into Fed. R. Bankr. P. 7009. *Sega Auto-Sales, Inc. v. Flores* (*In re Flores*), 524 B.R. 420, 429 (Bankr. D. Mass. 2015) (count under § 523(a)(2)(A) subject to pleading standards of Rule 9(b)). The Rule requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) requires a complaint alleging fraud to "set out the time, place, and content of the alleged misrepresentation with specificity." *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (*en banc*); s*ee Alternative Sys. Concepts, Inc. v. Synopsys*, *Inc.*, 374 F.3d 23, 29 (1st- Cir. 2004) (Rule 9(b) requires the pleader "to specify the who, what, where, and when of the allegedly false or fraudulent representation."). The heightened pleading standard of Rule 9(b) serves "to give notice to defendants of the plaintiffs' claim, to protect defendants whose reputation may be harmed by meritless claims of fraud, to discourage 'strike suits,' and to prevent the filing of suits that simply hope to uncover relevant information during discovery." *Doyle v. Hasbro*, 103 F.3d 186, 194 (1st Cir. 1996).

16. The Complaint is woefully deficient in this regard. The Complaint generally alleges multiple misrepresentations and failures to disclose. It fails, however, to identify a single alleged misrepresentation by time, place or content. For example, Paragraph 15 of the Complaint purports to enumerate the Debtor's "willful", "deliberate" and "intentional" acts. The

6

enumeration refers generally to "false representations including, but not limited to his experience, abilities and intentions concerning the personal management of the Band and Band Members", "fail[ure]" to disclose conflicts of interest" and "false representations to the Band and Band Members." Plaintiffs are required to enumerate each alleged misrepresentation by time, place, content and manner. *Alt. Sys. Concepts*, 374 F.3d at 29. Specifically, what false statement did the Debtor make about his "experience" and "abilities", when were such statements made, how were such statements conveyed, to whom were they made, and what did the recipient do in reliance on such statements, etc.?

17. The Complaint also alleges that the Debtor "provided false, inaccurate, misleading and untimely 'accountings' and financial documents." Complaint, ¶15(g). If Plaintiffs are claiming that the Debtor intentionally provided them with a fraudulent accounting, then the Plaintiffs are required to identify each such accounting with specificity: what was the nature of the accounting, in what respect was it false, when did the Debtor provide it and how and to whom was it provided? These are the absolute minimum pleading standards that must be satisfied.

18. Moreover, the Complaint fails to fully plead the elements of fraud. The elements of a Section 523(a)(2)(A) claim are the following: (1) a false representation, (2) made with fraudulent intent (3) an intention to induce the plaintiff to rely on the misrepresentation, (4) the misrepresentation induces reliance, (5) the reliance is justified, and (6) such reliance causes damage. *Palmacci v. Umpierrez*, 121 F.3d 781, 786 (1st Cir. 1997). The Complaint fails to allege that the Debtor made any such misrepresentations with the intent to induce reliance, and that the Plaintiffs relied on such misrepresentations, let alone what the Plaintiffs did in reliance. The closest the Complaint comes to addressing these elements is the allegation that the Debtor

7

"withheld material information from Band Members thereby causing the Band Members to delay reasserting their control over the financial affairs of the Band." Complaint, ¶15(n). But, even there, the allegation is not tied to any particular fraudulent misrepresentation, an allegation of intent to induce such delay, or any harm suffered by the Band and Band Members as a result of such "delay". Nor is the allegation of "delay" made with sufficient specificity to put the Debtor on notice as to the harm Plaintiffs might have suffered.

19. While § 523(a)(2)(A) is not limited to fraud by misrepresentation (*see Sauer, Inc. v. Lawson (In re Lawson)*, --- F.3d --- , 2015, No. 14-2058, WL 3982395 (1st Cir. July 1, 2015)), Plaintiffs have not alleged with the required specificity any actions taken by the Debtor tantamount to the common understanding of "fraud" more broadly construed.

20. Finally, the Complaint utterly fails to allege any damage suffered by any Plaintiff that was actually caused by reliance on any alleged misrepresentation. The sole damage alleged in the Complaint is the award of legal fees to the Plaintiff-trustee and his lawyers for having prevailed in their 93A count against Highsteppin. If the Louisiana Bankruptcy Court had found any actual damages arising from any fraudulent misrepresentations one would expect the allegation to have been in the Complaint. Indeed, the absence of any such allegation suggests that perhaps there simply are no damages. In all events, Plaintiffs are required to plead with specificity how they were (and/or who was) harmed by what fraudulent misrepresentation on which such Plaintiff relied to its or his detriment. For this reason, too, the Section 523(a)(2)(A) count should be dismissed.

8

**B.     Count III – Denial of Discharge of Debt Pursuant to Section 523(a)(4) -- Fails to Allege the Requisite Fiduciary Relationship and Fails to Plead Damages Arising from any Alleged Defalcation.**

21.     Count III of the Complaint asserts that the Debtor's alleged indebtedness to Plaintiffs of $1,828,587.51 should be denied pursuant to Section 523(a)(4).  Count III repeats the generalized allegations of fraud and deceit, failure to disclose conflicts, commingling of funds, creation of separate books of account "with the intent to deceive the Band and Band Members," and "diversion of the Band's and Band Members' income into Highsteppin's account."  Complaint ¶29.  The Complaint asserts that such actions "constitute fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny," on the basis of which the Debtor is allegedly indebted to Plaintiffs in the amount of $1,828,587.51.  Id., ¶¶ 29-30.  Such allegations plainly do not satisfy the requisite elements for excepting a debt from discharge under Section 523(a)(4).  Moreover, the allegations of the Complaint appear to demonstrate that the requisite elements cannot be satisfied.

22.     Section 523(a)(4)'s exception of a debt from discharge "reaches debts incurred through abuses of fiduciary positions ... [and] involv[ing] debts arising from the debtor's acquisition or use of property that is not the debtor's." *Raso v. Fahey (In re Fahey)*, 482 B.R. 678, 687 (B.A.P. 1st Cir. 2012) (brackets in original).  "To except a debt from discharge under § 523(a)(4), a creditor must establish that the debtor acted as the fiduciary in a fiduciary relationship and that his or her conduct in that capacity constituted a defalcation." *Abramov v. Movshovitch (In re Movshovitch)*, 521 B.R. 42, 64 (Bankr. D. Mass. 2014).  Here, Plaintiffs do allege that the Debtor was at all relevant times acting in a fiduciary capacity in respect of the Band and Band Members arising from the Management Agreement.  The gravamen of the Complaint is that, in light of the management responsibilities of Highsteppin, the Debtor owed

9

the Band and Band Members a duty of care, including, for example, a duty to provide various kinds of accountings, which the Debtor allegedly failed to do by his intentional misconduct.

23. The foregoing allegations do not, however, allege the kind of fiduciary relationship encompassed by Section 523(a)(4). It is apparent from the factual background recited in the Complaint that the fiduciary relationship, if any, arises solely out of a management contract and Massachusetts law. For example, the Complaint alleges that the Louisiana Bankruptcy Court found that Highsteppin committed "multiple breaches of the Agreement and its fiduciary duties *imposed by Massachusetts law*." Complaint, ¶13 (emphasis added). Elsewhere, it alleges that "Stepanian's performance, in carrying out the fiduciary obligations of Highsteppin as the Band's manager, fell so far below the standard of care required as to be actionable under Chapter 93A." Id., ¶16. However, "[t]he 'broad definition of fiduciary under nonbankruptcy law – a relationship involving trust, confidence, and good faith – is inapplicable in the nondischargeability context.'" *Movshovitch*, 521 B.R. at 64, quoting *Fahey*, 482 B.R. at 678, quoting *Honkanen v. Hopper (In re Honkanen)*, 446 B.R. 373, 378-79 (B.A.P. 9th Cir. 2011). Rather, it is federal law that determines the fiduciary relationship for Section 523(a)(4) purposes. *Fahey*, 482 B.R. at 688. Under federal law, a fiduciary relationship arises only out of a trust established either by declaration or a so-called "technical trust" established by statute or the common law. *Id*. Since the Complaint does not allege the existence of any trust, let alone one giving rise to a fiduciary relationship between the Debtor and the Band and Band Members, the Complaint fails to state a claim under Count III.

24. Count III also suffers from the same infirmity as Count II in its failure to allege damages connected to the alleged defalcation. The sole damage identified is the legal fees awarded to the Plaintiff-trustee and his lawyers against Highsteppin for prevailing in the Chapter

10

93A claim in the Louisiana litigation. The Complaint fails to identify any damages arising from any defalcation, let alone damages suffered by any identifiable Band Member arising from one or more identifiable acts of defalcation. Since the Complaint fails to allege any damage suffered by any Plaintiff arising from any alleged defalcation, Count III should be dismissed independently of the failure to plead the requisite fiduciary relationship. *Fahey*, 482 B.R. at 687 ("debt must result from a fiduciary's defalcation under an 'express or technical trust'").

25.     Finally, to the extent Count III relies on the vague allegations of fraud, as set forth above with respect to Count II, allegations of fraud must be pled with particularity. *See Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1223 (1st Cir. 1996), *abrogated in part by statute on other grounds*, (in deciding whether to apply Rule 9(b)'s heightened pleading standard, the First Circuit does not rely on the "title of the claim," but looks to see if the claim is based on an "allegation of fraud").

C.     **Count IV – Denial of Discharge of Debt Pursuant to Section 523(a)(6) -- Fails to Allege Facts Constituting Willful and Malicious Injury or Any Damages Arising Therefrom.**

26.     Echoing Counts II and III, Count IV of the Complaint asserts that the Debtor's alleged indebtedness to Plaintiffs of $1,828,587.51 should be denied pursuant to Section 523(a)(6). Repeating the generalized allegations of fraud, Count IV asserts that the Debtor "caused willful and malicious injury to the Band and Band Members" by having made false representations, and by his failure to disclose conflicts, commingling of funds, creation of separate books of account "with the intent to deceive the Band and Band Members," and "diversion of the Band's and Band Members' income into Highsteppin's account." Complaint ¶32. As a consequence of such conduct, the Complaint alleges that the Debtor is in debt to the Plaintiffs in an amount not less than $1,828,587.51. Id., ¶33. This Count fails for multiple

11

reasons. First, the sole quantifiable injury allegedly suffered by Plaintiffs is the Plaintiff-trustee's and his lawyers' having incurred $1,828,587.51 in legal fees in litigation in the Louisiana Bankruptcy Court. The Complaint does not assert facts making the Debtor liable for such fees. Even if the Debtor were liable to the Plaintiff-lawyers for the legal fees expended in the Louisiana Bankruptcy Court, such legal fees cannot be the basis for relief under Section 523(a)(6).

27. In order for an indebtedness for an injury to be excepted from discharge under Section 523(a)(6), it is not enough that the debtor committed a wrongful act that resulted in injury – rather the debtor must have intended the injury itself. *Kawaauhau v. Greiger*, 523 U.S. 57, 61-62, 118 S.Ct. 974 (1998). As the Seventh Circuit explained,

> An injury is willful within the meaning of section 523(a)(6) only if intended; if it's the result but not the intended result of an intentional act, the debt arising from the injury is dischargeable [citing *Kawaauhau*] ("nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury") id., at 61, 118 S.Ct. 974), even if the injury was the result of a reckless act. [citations omitted] Indeed, not even all intentional torts are covered. [citations omitted] Debts resulting from fraud, for example, are covered in different sections of the Bankruptcy Code. [citations omitted]

*Trenwick Am. Reinsurance, Corp v. Swasey, (In re Swasey)*, 488 B.R. 22, 34 (Bankr. D. Mass. 2013), quoting *Jendusa-Nicolai v. Larsen*, 677 F.3d 320, 322 (7th Cir. 2012). The relief requested under Count IV, that the Debtor's alleged liability for the Plaintiff-lawyers' legal fees be excepted for discharge, requires that the Debtor intended by his actions to cause such lawyers to incur substantial legal fees. But, that is not alleged. Nor would such an allegation even be plausible. The legal fees arose out of litigation many years following the alleged wrongdoing when, according to the Complaint, Highsteppin's subsequent suit against the Band and Band

12

Members was removed to the Louisiana Bankruptcy Court and the Band's and Band Members' counterclaims were adjudicated. Complaint, ¶¶10-12.

28. Nor have the Plaintiffs stated a cause of action under Section 523(a)(6) based on the violations of Chapter 93A found by the Louisiana Bankruptcy Court against Highsteppin. Even if the Debtor were liable as a matter of law for the 93A violations of Highsteppin, as Plaintiffs allege (Complaint, ¶¶13, 18), a willful and knowing unfair and deceptive practice in violation of Chapter 93A does not state a cause of action under Section 523(a)(6). As Judge Feeney explains, "the 'willful and knowing' standard for purposes of Chapter 93A is not the same as the standard for willfulness under § 523(a)(6). Under § 523(a)(6), only 'a debtor who intentionally acts in a manner he knows, or is substantially certain, will harm another may be considered to have intended the harm and, therefore, to have acted willfully.'" *In re Swasey*, , 488 B.R. at 44-45 (quoting *McAlister v. Slosberg (In re Slosberg)*, 225 B.R. 9, 19 (Bankr. D. Me. 1998).

29. In the absence of factual allegations showing that the Debtor intended by his conduct to cause an award of legal fees in the 93A counterclaim or other factual allegations showing the Debtor intended by his conduct to cause some other quantifiable injury and indebtedness, Count IV should be dismissed.

30. Finally, to the extent that the Plaintiffs rely on their generalized and vague allegations of fraudulent misrepresentations and false accountings, and related allegations sounding in fraud, Count IV should be dismissed because (i) such allegations lack the required specificity; and (ii) the Section 523(a)(6) exception for willful and malicious injury is not applicable to fraud. *Jendusa-Nicolai*, 677 F.3d at 322 (debts arising from fraud covered by other sections of the Code).

13

**II.    Count I of the Complaint Seeking Denial of Discharge Pursuant to § 727(a)(3) Should Be Dismissed Because the Complaint Fails to Plead Facts Showing that the Debtor's Record-Keeping Practice With Respect to Highsteppin is Relevant to the <u>Debtor's Current Financial Condition or Business Transactions.</u>**

31.    The gravamen of Plaintiffs' Count I is that the Debtor so mismanaged the financial affairs of Highsteppin – by commingling funds from another client into a single checking account and then providing "false, inaccurate, and misleading 'accountings'" – that it is not possible to determine what assets belong to Highsteppin and what assets belong to the Band and Band Members.  <u>Complaint</u>, ¶20.  Based entirely on the alleged mismanagement of Highsteppin that occurred 7-9 years ago, Plaintiffs allege that it is "impossible to determine" the financial condition of the Debtor.  <u>Id</u>., ¶21.

32.    As explained below, Count I fails to satisfy the pleading standards of Rule 8, because the actual facts that are pled fail to support any allegation that the Debtor's own and current financial condition and business transactions cannot be ascertained.

33.    Fed. R. Civ. P. 8, incorporated by reference in Bankruptcy Rule 7008 provides, in pertinent part, that "[a] pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief."  This requires a complaint to contain factual allegations "plausibly suggesting (not merely consistent with)" an entitlement for relief.  *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 563, 127 S.Ct. 1955, 1969-70 (2007) (dismissing anti-trust suit where complaint pled facts sufficient to show "parallel conduct" among defendants, but not sufficient to show an actual conspiracy).  Further, the complaint must "state a claim to relief that is plausible on its face" in order to survive a motion to dismiss.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009).  "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id*.  "Threadbare recitals of

14

the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 1950. Despite the relatively low bar set by Rule 8's requirement of a "short and plain statement," courts are not bound to accept legal conclusions as true simply because they are "couched as a factual allegation." *Id*.

34. Here, the factual allegations as to Highsteppin's records are themselves threadbare: vague allegations of commingling and unspecified fraudulent accountings. But, what is completely missing from the Complaint are any factual allegations that connect the management (or alleged mismanagement) of Highsteppin during the years 2006 through 2009 with the financial condition of the Debtor in 2015. It is not enough simply to allege that the mismanagement of Highsteppin in 2009 has made it impossible to determine the financial condition of the Debtor in 2015. That is a statement of the conclusion devoid of any factual connection.

35. The ultimate question is whether the records of Highsteppin six to nine years ago bear upon the financial condition of the Debtor today. The Plaintiffs have the burden of proof and hence must plead facts showing that the old Highsteppin records contain recorded information from which the Debtor's present financial condition or business transactions may be ascertained. *In re Joslin*, 499 B.R. 47, 53 (Bankr. D.Mass. 2013) (party objecting to discharge has burden of proving that the records which debtor concealed, falsified or failed to keep recorded information "from which debtor's financial condition or business transactions might be ascertained"). There may be circumstances where a debtor's failure to maintain records with respect to a closely held corporation bears on the debtor's financial condition. *E.g., In re Spitko*, 357 B.R. 272, 308-310 (Bankr. E.D. Pa. 2006) (debtor's closely held corporation was an operating company at the time of filing with annual income of more than $2 million and ongoing

15

cash withdrawals between the corporation and the debtor). On the other hand, where a corporate affiliate of the debtor has been dissolved or is otherwise not presently conducting any business activity, the failure to keep corporate records is not a basis for denial of the debtor's discharge. *See In re Hobbs*, 333 B.R. 751, 757 (Bankr. N.D. Tex. 2005) (debtor was not denied a discharge for failing to keep records of a corporation dissolved several years before the bankruptcy filing); *In re More*, 138 B.R. 102, 105 (Bankr. M.D. Fla. 1992) (failure to keep corporate records is not a reason to deny a discharge when the corporation had been dissolved for two years).

36. Here, whether or not Highsteppin has been formally dissolved, the records in question date back over six years ago and the Plaintiffs have failed to allege any facts showing that such records would bear on the Debtor's current financial condition one way or the other. To the contrary, it appears that at best the allegations show that Highsteppin breached its management contract with the Band and Band Members and committed other torts for which the Debtor might or might not be liable, including matters pertaining to the financial records of the Band and Band Members. That dispute does not plausibly have any bearing on the Debtor's current financial condition. Even if one could imagine facts on the basis of which records that should have been kept six years ago have some bearing on the Debtor's current financial condition, no such facts have been pled.[1]

37. Plaintiffs attempt to bootstrap the relevancy of Highsteppin by alleging that the Debtor used Highsteppin as his "alter ego." Complaint, ¶14. That Highsteppin was the Debtor's alter ego is itself a conclusion of law, which must be based on factual allegations. The Complaint does not even purport to allege the facts supporting an alter ego theory under

---

[1] The Trustee himself appears satisfied enough as to the Debtor's financial condition and business transactions that, following a production of documents to the Trustee after the first 341 Meeting, and following a second 341 Meeting, the Trustee filed a no-asset report, certifying that the estate is fully administered. (See Docket entry dated May 7, 2015)

16

1849811v2/19892-2

Massachusetts law. Even if Highsteppin were the Debtor's "alter ego," there are no facts alleged which bear on the relevance of six-year old events to the Debtor's current financial condition.

38.  For these reasons, Count I should be dismissed with prejudice.

### III.  The Only Indebtedness Alleged in the Complaint Are Legal Fees Due a Subset of Plaintiffs.

39.  The Complaint repeats throughout an indebtedness arising from the award of $1,828,587.51 in legal fees against Highsteppin. According to the Complaint, the sole parties to whom Highsteppin was found liable were the Plaintiff-trustee and the Plaintiff-lawyers. Complaint, ¶17. Based solely on the allegations of the Complaint, there was no award of any kind in favor of the other Plaintiffs, let alone any award against the Debtor. Even assuming the Complaint alleged facts sufficient to make the Debtor co-liable with Highsteppin for the legal fees, there is simply no indebtedness due to the other Plaintiffs – certainly, none identified in the Complaint. Accordingly, for this reason alone and independent of the reasons for dismissing the Complaint as to all Plaintiffs as set forth above, the Complaint should minimally be dismissed as to all Plaintiffs other than the Plaintiff-trustee and Plaintiff-lawyers.

**Conclusion**

For all of the foregoing reasons, the within defendant-debtor, Philip I. Stepanian, respectfully requests that this Court dismiss the Complaint in its entirety with prejudice and grant such other and further relief as is just and proper.

Respectfully submitted,

PHILIP I. STEPANIAN

By his attorneys,

/s/ Adam J. Ruttenberg
David J. Reier (BBO No. 546202)
Adam J. Ruttenberg (BBO No. 553158)
POSTERNAK BLANKSTEIN & LUND LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199-8004
Telephone: 617-973-6100
Telecopier: 617-367-2315
Email: dreier@pbl.com

Dated: August 12, 2015

**CERTIFICATE OF SERVICE**

IT IS CERTIFIED that the foregoing document was filed this 12th day of August, 2015 through the ECF filing system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/ Adam J. Ruttenberg
Adam J. Ruttenberg

1849811v2/19892-2