UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

EASTERN DIVISION

| | |
|---|---|
| In re<br><br>Philip I. Stepanian<br><br>  Debtor<br>_____<br><br>Wilbur J. Babin, Trustee-in-bankruptcy of George Porter, Jr., Brian H. Stoltz, David Russell Batiste, Jr., Porter-Batiste-Stoltz, LLC, Ronnie Glynn Penton, LLC, The Penton Law Firm, John O. Pieksen, Jr. and John Pieksen& Associates, LLC<br><br>  Plaintiffs<br><br>v.<br><br>Philip I. Stepanian<br><br>  Defendant | Chapter 7<br>No. 13-12692-JNF<br><br><br><br><br>Adv. Pro. 15-1139 |

## **PLAINTIFFS' OPPOSITION TO DEBTOR'S MOTION TO DISMISS**

Now come Plaintiffs[1] in the above captioned Adversary Proceeding and hereby oppose the motion of Philip I. Stepanian ("Debtor" or "Stepanian") to dismiss this Adversary Proceeding.

---

[1] Wilbur J. "Bill" Babin ("Babin" or the "Trustee") as he is Trustee in Bankruptcy in the Eastern District of Louisiana of the bankruptcy estates of George Porter, Jr. ("Porter"), Brian H. Stoltz ("Stoltz"), and David Russell Batiste, Jr. ("Batiste"), (collectively and/or individually "Band Members"); Porter-Batiste-Stoltz, LLC ("the Band"); Ronnie Glynn Penton ("Penton"); The Penton Law Firm ("Penton Firm"); John O. Pieksen, Jr. ("Pieksen"), and John Pieksen& Associates, LLC ("Pieksen Firm") (collectively and/or individually the "Lawyers") (all of whom are jointly and/or singularly "Plaintiffs" or "Creditors"),

## BACKGROUND

In 2006, George Porter ("Porter") Jr., Brian H. Stoltz ("Stoltz"), and David Russell Batiste, Jr. ("Batiste") were members of a musical band that did business as Porter-Baptist-Stoltz, LLC ("PBS, or "the Band", or collectively "the Band Members") that executed a personal management contract ("Agreement") with Highsteppin Productions, LLC ("Highsteppin"). *In re Porter*, 498 B.R. 609, 620 (Bankr. E.D. La. 2013).

Stepanian at all times material hereto has been the manager and, upon information and belief, the sole member of Highsteppin. Complaint at ¶ 2.

The Agreement had an initial 2 year term with an automatic 18 month renewal after which the Band Members could terminate without cause. The Agreement was governed by Massachusetts law. *Id*. at 621.

Among other things, the Agreement provided that Highsteppin would be paid commissions on the gross earnings of the Band. *Id*. at 621-622.

On December 29, 2009, Highsteppin filed suit in the United States District Court for the District of Massachusetts against Porter, Stoltz and Batiste as well as PBS. *See In re Porter*, 511 B.R. 785 (Bkrtcy. La. 2014) ("the Massachusetts Suit"). The court ordered Porter, Stoltz and Batiste to escrow portions of their income as prejudgment security.

On September 27, 2010 Porter, Stoltz and their wives filed Chapter 7 bankruptcy petitions in Louisiana. They both scheduled Highsteppin as an unsecured creditor with disputed debt of $504,040.06. Batiste filed a Chapter 7 bankruptcy petition on September 28, 2011 and also listed Highsteppin as an unsecured creditor holding a disputed claim of $504,040.06. *Id*.

William J. Babin was appointed Chapter 7 Trustee in the Porter, Stoltz, and Batiste bankruptcies. In connection with his serving as Chapter 7 Trustee, he retained as counsel Ronnie

Glynn Penton ("Penton"); The Penton Law Firm ("Penton Firm"); John O. Pieksen, Jr. ("Pieksen"), and John Pieksen & Associates, LLC ("Pieksen Firm").

On or about December 6, 2010, the Massachusetts Suit was removed to the United States District Court for the Eastern District of Louisiana due to the pending bankruptcy proceedings. *Id*.

On December 29, 2010, Highsteppin filed a Complaint to Determine Dischargeability of Debt against Porter and Stoltz. Highsteppin's Complaint to Determine Dischargeability of Debt was filed against Batiste on December 30, 2011. In addition, Highsteppin filed proofs of claim in the Porter and Stoltz cases. In substance, Highsteppin claimed that Porter, Stoltz, and Batiste owed it approximately $600,000 for funds advanced to pay tour, promotional, merchandise, music production and living expenses. *Id*.

Babin, as trustee of the bankruptcy estates of Porter, Stoltz, and Batiste claimed that Highsteppin had breached its fiduciary duties to Porter, Stoltz, and Batiste and had violated M.G.L. c. 93A.

Highsteppin's Dischargeability actions, the Massachusetts Suit, all third party demands, and all counterclaims were substantively consolidated on February 23, 2011 in the Louisiana Bankruptcy Court.

All matters were set for trial on February 13, 2012 in the Louisiana Bankruptcy Court.

After trial the Louisiana Bankruptcy Court found, among other things:

1. Neither [Highsteppin] nor [Porter, Stoltz, and Batiste] were owed sums under the[ir] [Agreement] due to offsetting claims;

2. [Highsteppin] was ordered to account for any and all proceeds received from the sale, license, or use of merchandise or music of [Porter, Stoltz, and Batiste] …

3. [Highsteppin was ordered to] immediately notify all parties with whom it contracted or authorized any distribution, sale, license or use of [Porter, Stoltz, and Batiste's] works of the termination of its nonexclusive license in same and the corresponding termination of the third party's rights. It must also instruct the addressees to contact Babin should they possess any property or revenue belonging to Porter, Batiste Stoltz…

4. [Highsteppin was ordered to] deliver all merchandise, CDs or other product purchased or produced during the term of the Agreement to Babin. To the extent the merchandise or music is in the hands of a third party, [Highsteppin] must recover said property and deliver it to Babin.

5. The [Louisiana Bankruptcy Court's] ruling may require the amendment of [Porter, Stoltz, and Batiste's] tax returns for tax years 2006, 2007, 2008 or 2009. To the extent amendments are possible, [Porter, Stoltz, and Batiste] will be reimbursed for all fees and costs associated with the preparation of amended tax returns, as well as any penalties or interest payable on any taxes owed due to late filing or change in the amounts originally due. To the extent an amendment generates a refund, [Highsteppin] is responsible for the payment of interest on the refund generated by the amended return at the federal rate from the date of the original tax return's filing through the date of receipt of the refund. To the extent an amendment cannot be filed due to the intervention of time, [Highsteppin] will be responsible for the additional refund amount which might otherwise be claimed with interest at the federal rate until paid. All amended returns or calculations in the event an amended return cannot be filed, [were] to be submitted to the Court and delivered to HSP no later than October 1, 2013.

6. [The Louisiana Bankruptcy Court's] specifically reserve[d] for later determination and after evidentiary hearing on award for [Babin's] attorneys' fees and costs, as well as any amounts due under paragraph 4 above. The Court will notice a status conference between the parties to set the necessary pretrial deadlines and hearing date. …

*In re Porter*, 498 B.R. 609, 678-79 (Bankr. E.D. La. 2013)[2]

---

[2]The Louisiana Bankruptcy Court has entered a stay pending appeal to determine whether its decision on counterclaims was properly treated as final judgment or merely as proposed findings of fact and conclusions of law. In re Porter, 511 B.R. 785, 811-12 (Bankr. E.D. La. 2014)

On January 17, 2014, the Louisiana Bankruptcy Court ordered Babin as Chapter 7 Trustee for Porter, Stoltz, and Batiste to submit evidence of fees and costs for which he sought damages. *In re Porter*, No. 10-13553, 2014 WL 585962, at *1 (Bankr. E.D. La. Feb. 14, 2014)

Accordingly, the Louisiana Bankruptcy Court found that because the bankruptcy estates of Porter, Stoltz, and Batiste were injured and, correspondingly, relief had been entered against Highsteppin, the bankruptcy estates of Porter, Stoltz, and Batiste were entitled to be awarded reasonable attorneys' fees and costs. The Court also found that because the breach of contract claims and MUTPA claims arose from a single chain of events, the efforts devoted to the breach of contract claims need not be culled out from the efforts expended on the MUTPA claims. *In re Porter*, No. 10-13553, 2014 WL 585962, at *3 (Bankr. E.D. La. Feb. 14, 2014)

Based on these findings the Louisiana Bankruptcy Court calculated the fees and costs due Pieksen and Penton as counsel to the bankruptcy estates of Porter, Stoltz, and Batiste. Fees in the amount of $711,457.50 to Pieksen. Fees in the amount of $951,581.25 to Penton. Costs in the amount of $54,176.14 to Pieksen and $111,372.72 to Penton. Total amount of fees and costs $1,828,587.61. *In re Porter*, No. 10-13553, 2014 WL 585962, at *8-10 (Bankr. E.D. La. Feb. 14, 2014)

On March 4, 2015 the Debtor filed a Chapter 7 Bankruptcy Petition.

On July 13, 2015, Plaintiffs filed the instant four count Complaint. Count I seeks a denial of discharge pursuant to 11 U.S.C. § 727 (a) (3); Count II seeks the denial of discharge of debt pursuant to 11 U.S.C. § 523 (a) (2) (A); Count III seeks denial of discharge of debt pursuant to 11 U.S.C. § 523 (a) (4), and Count IV seeks denial of discharge of debt pursuant to 11 U.S.C. § 523 (a) (6).

Debtor has moved to dismiss all counts pursuant to Fed R. Civ. P. 8, 9(b) and 12 (b) (6).

## STANDARD OF REVIEW

On a motion to dismiss pursuant to Fed. R. Civ. P. 12 (b) (6), the Court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 125 F.3d 75, 77 (1st Cir. 1999)).

To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal ("Iqbal")*, 129 S. Ct. 1937, 1949 (2009) The required plausibility standard does not rise to the level of probability. See *Iqbal,* 129 S. Ct. at 1949 ("[a complaint must include facts] to state a claim to relief that is plausible on its face [but] this plausibility standard is not akin to a probability requirement.").

When applying the "probability standard" latitude from the trial court is appropriate particularly in cases where a material part of the information necessary to meet the standard is likely within a defendant's control. *Garcia-Catalan v. United States*, 734 F.3d 100, 104-05 (1st Cir. 2013). "[M]oreover, … the plausibility inquiry properly takes into account whether discovery can reasonably be expected to fill any holes in the pleader's case."*Id*.

Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment. *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.,* 267 F.3d 30, 33 (1st Cir. 2001). However, a court may consider documents "central to the plaintiffs' claim" or "sufficiently referred to in the complaint" without converting the motion to dismiss into one for summary judgment. *Watterson v. Page,* 987 F.2d 1, 3 (1st Cir.1993).

Accordingly, when considering this matter, the Court should accept as true all of the factual allegations in the Complaint including the following:

5. On May 8, 2006 the Band, Band Members and Highsteppin executed a personal management contract (the "Agreement").

6. Pursuant to the Agreement, Stepanian assumed complete control over all financial aspects of the Band and Band Members' careers, including, but not necessarily limited to, collection of revenue from their performances, sale of merchandise upon their behalf, payment of touring and promotional expenses, and advancement of living expenses from amounts collected.

7. As such, Stepanian was a fiduciary to the Band and Band Members, and owed them fiduciary duties of loyalty and due care.

8. Pursuant to his fiduciary duties to the Band and Band Members, Stepanian was obligated to, among other things; provide full disclosure, regarding, among other matters, (a) all facts related to the subject-matter of the fiduciary relationship, (b) a full accounting of receipts and disbursements, and (c) any conflict(s) of interest. Stepanian and Highsteppin were further required to refrain from self-dealing, commingling the Band and Band Members' assets with Stepanian's own assets, and conversion of cash and receipts belonging to the Band and Band Members.

9. Porter, by proper written notice, lawfully terminated the Agreement as of November 7, 2009.

10. In December 2009, Highsteppin filed suit against the Band and the Band Members in the United States District Court, Eastern District of Massachusetts, for claims under contract, tort and statutory law, including the Massachusetts Consumer Protection Act, G.L. Chapter 93A ("Chapter 93A").

11. The Band and the Band Members filed counterclaims against Highsteppin, as well as third-party claims against Stepanian individually, containing counts under contract, tort, and Chapter 93A as well as federal copyright law.

12. The Massachusetts proceeding was subsequently removed to the Bankruptcy Court, Eastern District of Louisiana ("the Louisiana Bankruptcy Court"), wherein Highsteppin filed Adversary Proceedings against two Band Members, Porter and Stoltz. The Adversary Proceedings were administratively consolidated, and eventually tried before Chief Judge Elizabeth W. Magner, in two (2) separate phases spanning six (6) weeks during the months of June through September of 2012.

13. After trial, the Louisiana Bankruptcy Court found that Highsteppin willfully violated Chapter 93A, and also committed, among other things, multiple breaches of the Agreement and its fiduciary duties imposed by Massachusetts law.

14. Stepanian had unilateral and exclusive control of Highsteppin and used Highsteppin for his personal use and benefit, commingled his personal assets with those of Highsteppin, and used Highsteppin as his alter ego.

15. In connection with his representation of the Band and Band Members, Stepanian willfully, deliberately and intentionally committed, among other things, the following acts:

    a. He made false representations including, but not limited to his experience, abilities and intentions concerning the personal management of the Band and Band Members.

    b. He failed to disclose conflicts of interest.

    c. He commingled all transactions for the Band, Band Members, Highsteppin, himself and at least one other client into a single checking account.

    d. He failed to keep the Band and Band Members apprised of their financial situation including the receipt of income from merchandise and digital sales.

    e. He diverted the Band's and Band Members' performance income into Highsteppin's account.

    f. He made false representations to the Band and Band Members and created a separate set of books with the specific intent to deceive the Band and Band Members.

    g. He maintained and provided false, inaccurate, misleading and untimely "accountings" and financial documents making it impossible to determine the financial condition of the Band, Band Members, Highsteppin and Stepanian himself.

    h. He concealed, destroyed, mutilated, falsified, or failed to keep or preserve recorded information, including books documents, records and papers, from which his financial condition or business transactions might be ascertained making it impossible to determine the financial condition of the Band, Band Members, Highsteppin and Stepanian himself.

    i. He caused the Band Members to file bankruptcy.

j. He failed to accept responsibility for his lack of transparency or reporting to the Band and Band Members.

k. He advanced funds for the benefit of a single Band Member without the consent of the others.

l. Stepanian received reimbursement from all three Band Members for merchandise and travel expenses incurred by him *prior to* the execution of the Agreement.

m. He made inequitable distributions to the Band Members and failed to disclose these inequitable distributions to the Band Members.

n. He withheld material information from Band Members thereby causing the Band Members to delay reasserting their control over the financial affairs of the Band.

o. He caused injury, including loss of money and/or property, to the Band and Band Members.

16. Stepanian's performance, in carrying out the fiduciary obligations of Highsteppin as the Band's manager, fell so far below the standard of care required as to be actionable under Chapter 93A.

17. The Louisiana Bankruptcy Court found Highsteppin liable to the Trustee and the Lawyers for fees and costs in the amount of $1,828,587.51, pursuant to Chapter 93A.

18. For purposes of dischargeability, Stepanian is jointly and severally liable for the claims that arose between the Creditors and Highsteppin. See *Bond Leather Co., Inc. v. Q.T. Shoe Mfg. Co., Inc.* 764 F. 2d 928, 938 (1st Cir. 1985) ("it is settled that a corporate officer who commits a tort is personally liable for his actions and cannot seek refuge in the fact the he was acting for the corporation") (citing *Refrigeration Disc. Corp. v. Catino*, 330 Mass. 230 235, 112 N.E. 2d 790 (1953); *Hawks Holding, LLC v. Kalinowski (In re Kalinowski),* 449 B.R. 797, 810 (Bankr. D.N.M. 2011)("a corporate officer or managing member of a limited liability company can act in a fiduciary capacity and be held liable for a non-dischargeable debt when that person is charged with carrying out the fiduciary obligations of the artificial business entity") aff'd 482 B.R. 334 (B.A.P. 10th Cir. 2012).

Complaint at ¶¶ 5-18

## ARGUMENT

### I. The Complaint Meets The Pleading Requirements And The Motion To Dismiss Should Be Denied

**A. Count I denial of discharge pursuant to 11 U.S.C. §727 (a) (3).**

11 U.S.C. § 727(a)(3) provides in pertinent part:

> (a) The court shall grant the debtor a discharge, unless—
> ....
> (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case....

Defendant claims, citing *Bell Atlantic Corp. v. Twombly (Twombly)*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937 (2009), that Count I seeking denial of discharge pursuant to 11 U.S.C. §727 (a) (3) fails to meet the pleading standard required by those cases. Defendant asserts, without any legal authority, that "Count I fails to satisfy the pleading standards of Rule 8, because the actual facts that are pled fail to support any allegation that the Debtor's own and current financial condition and business transactions cannot be ascertained." Memo at 14. Defendant then asserts, again without any legal authority, that to maintain an action for denial of discharge pursuant to 11 U.S.C. §727 (a) (3) "It is not enough to allege that the mismanagement of Highsteppin in 2009 has made it impossible to determine the financial condition of the Debtor in 2015." Memo at 15.

"As the court held in *Twombly*, the pleading standard Rule 8 does not require 'detailed factual allegations'...." I*qbal,* 129 S. Ct. at 1949 (citing *Twombly,* 550 U.S. at 555) (internal citation omitted). "Notice pleading ... remains the rule in the federal courts, requiring only a 'short and plain statement of the claim. See Fed. R. Civ. P. 8(a). While a plaintiff's claim to relief must be supported by sufficient factual allegations to be "plausible" under Twombly, nothing

requires a plaintiff to prove her case in the pleadings." *Chao v. Ballista,* 630 F. Supp. 2d 170, 177 (D. Mass. 2009) (quoting *Twombly,* 550 U.S. at 555). The *Twombly* Court emphasized that, in reaching its conclusion that the plaintiffs in that case had failed to state a claim, "we do not apply any 'heightened' pleading standard, nor do we seek to broaden the scope of Federal Rule of Civil Procedure 9.... Here, our concern is not that the allegations in the complaint were insufficiently 'particular [ized]'; rather, the complaint warranted dismissal because it failed *in toto* to render plaintiffs' entitlement to relief plausible." *Twombly,* 550 U.S. at 569 n.14 (internal citation omitted). Courts should not dismiss claims supported by factual allegations sufficient to "state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S. Ct. 1937 (citing *Twombly,* 550 U.S. at 556).

Defendant ignores the specific findings of the Louisiana Bankruptcy Court at ¶ 15 of the Complaint. Moreover, the allegations at ¶¶ 20-23 of the Complaint that Stepanian's commingling of the funds belonging to the Band and Band Members with funds belonging to Highsteppin and at least one other client into a single checking account, his creation [of[ a separate set of books and records, and his maintenance of false, inaccurate, and misleading "accountings" and financial documents…make it impossible to determine [Stepanian's financial condition] easily meet the "plausibility" standard in both *Twombly* and *Iqbal*.

**B. Count II denial of discharge of debt pursuant to 11 U.S.C. §523 (a) (2) (A).**

11 U.S.C. § 523(a)(2)(A) provides in pertinent part:

> a debt "for money, property, services, or an extension, renewal, or refinancing of credit" is excepted from discharge "to the extent obtained by ... false pretenses, a false representation, or actual fraud...."

Defendant's argument that the Complaint must be dismissed because it "fails to allege that the Debtor made any …misrepresentations with the intent to induce reliance…" (Memo at 7) misstates the law. See *In re Lawson*, 791 F. 3d 214, 220 (1st Cir. 2015) (citing *McClellan v. Cantrell,* 217 F.3d 890, 894 (7th Cir.2000) (holding "actual fraud" under § 523(a)(2)(A) is not limited to fraud effected by misrepresentation.) Actual fraud, for purposes of denial of discharge under section § 523 (a) (2) (A), requires neither a misrepresentation by a debtor, nor reliance by a creditor. *McClellan v. Cantrell* at 894. *See also In re Jairath*, 259 B.R. 308, 314 (Bankr. N.D. Ill. 2001) (holding that a plaintiff need not allege misrepresentation and reliance to state a claim for actual fraud under § 523(a)(2)(A))

Actual fraud "embraces all the multifarious means which human ingenuity can devise and which are resorted to by one individual to gain an advantage over another by false suggestions or by the suppression of truth." *McClellan v. Cantrell* at 893 (citing *Stapleton v. Holt,* 207 Okla. 443, 250 P.2d 451, 453–54 (Okla.1952)). Moreover, "[n]o definite and invariable rule can be laid down as a general proposition defining fraud, and it includes all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated." *Id.*

Defendant, without citing to any legal authority, incorrectly asserts that Plaintiffs are required to identify the nature of each fraudulent accounting he provided and the reasons the accountings were false. Memo at 7. To the contrary, Plaintiffs have sufficiently pled the "who, what and how" of actual fraud, i.e. Stepanian, by and through Highsteppin or otherwise, obtained money and property from Plaintiffs through [false] statements concerning his experience, abilities and intentions; failed to disclose conflicts of interest; commingled assets; created and maintained separate books and accounts; and submitted false, inaccurate and misleading accountings and financial documents. *See In re Yotis*, 521 B.R. 625, 636 (Bankr. N.D. Ill. 2014)

(denying motion to dismiss § 523(a)(2)(A) count where complaint established that debtor, using a series of '"half-truths… was a con artist who scammed plaintiff in a 'long con.'") Much like the "long con" employed by the debtor in *In re Yotis*, here Stepanian dissembled, used surprise, trick, cunning, and unfairness as detailed by the Louisiana Bankruptcy Court. See Complaint at ¶¶ 5-18.

Plaintiffs have met the pleading standard concerning denial of discharge of debt pursuant to 11 U.S.C § 523 (a) (2) (A).

C. **Count III denial of discharge of debt pursuant to 11 U.S.C. §523(a)(4).**

11 U.S.C. § 523(a) (4) provides in pertinent part:

(a) A discharge ... does not discharge an individual debtor from any debt ...

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

In this matter, the Defendant argues, "It is apparent from the factual background recited in the Complaint that the fiduciary relationship, if any, arises solely out of a management contract and Massachusetts law." Memo at 10. Then, relying on *Abramov v. Movshovitch (In re Movshovitch),* 521 B.R. 42, 64 (Bankr. D. Mass. 2014), the Defendant argues that the Complaint fails to allege the fiduciary relationship necessary to implicate 11 U.S.C. § 523(a) (4).

Defendant's reliance on *In re Movshovitch* is misplaced. In that case, the plaintiff sought a determination that certain debts were excepted from discharge pursuant to 11 U.S.C. §523(a)(4). In support of his argument that the debtor was a fiduciary, the plaintiff a recent immigrant who was unable to speak English, argued that the debtor held a position of trust and prominence over the plaintiff and was therefore a "business mentor" of the plaintiff. *Id*. at 64-65. The court declined to find that the "business mentor trusting immigrant mentee" relationship rose to the level of a fiduciary relationship. *Id*. The court also rejected plaintiff's argument that the *Farley v.*

*Romano (In re Romano)*, 353 B.R. 738, 762–63 analysis applied as there was no ownership interest by plaintiff in the debtor's company. *Id*.

In this matter, as the Louisiana Bankruptcy Court found, "Although the [Agreement] specifically provides that [Highsteppin] is not the Artists' business manager, [Highsteppin] voluntarily assumed the role. …Instead, [Highsteppin]'s assumption of the role of business manager is outside the terms of the [Agreement] and its duties are determined by the standard of care required by its fiduciary position." *In re Porter*, 498 B.R. 609, 651-52 (Bankr. E.D. La. 2013).

Defendant also argues "the Complaint does not allege the existence of any trust…" Memo at 10. However, the Complaint at ¶¶ 6-8 states in part:

> …Stepanian assumed complete control over all financial aspects of the Band and Band Members' careers, including …**collection of revenue from their performances** and sale of merchandise upon their behalf, as well as payment of touring and promotional expenses and advancement of living expenses from amounts collected. (emphasis supplied)

While the qualities of "fiduciary capacity" for purposes of § 523(a)(4) are defined by federal law, the content of federal law is informed by principles articulated in state law, including those that define essential attributes of a trust relationship. *In re Brown*, 131 B.R. 900, 904-05 (Bankr. D. Me. 1991) (internal citations omitted). One must look further to ascertain whether the relationship was imbued with attributes giving rise to, in substance, a trust. *Id*. Indicia of a trust include unfettered control of and access to assets. *Id*. "Accordingly, the issue is whether the generalized fiduciary duty owed to [a creditor] by [a debtor] were imbued with attributes giving rise to, in substance, a trust, or whether [a debtor] was in a position of substantial ascendancy over [a creditor]." *In re Romano*, 353 B.R. 738, 764 (Bankr. D. Mass. 2006) (internal citations and quotations omitted) *See also In re Frain*, 230 F 3d. 1014, 1018-19

(7th Cir. 2000) ("A contract was necessary to the existence of a fiduciary relationship, but the obligations of the contract were not the source of the fiduciary relationship. The source of the fiduciary relationship was Frain's substantial ascendancy over O'Shea and Schoenfeld. Whether any alleged breach of contract was a defalcation is an issue for the bankruptcy court.").

Here, the Debtor's unfettered control over the Band and Band Members was the source of the fiduciary relationship and carried with it the attributes of a trust.

Plaintiffs have also alleged, and the Louisiana Bankruptcy Court has found, "Stepanian was a fiduciary to the Band and Band Members, and owed them fiduciary duties of loyalty and care."

**D. Count IV denial of discharge of debt pursuant to 11 U.S.C. §523 (a) (6).**

11 U.S.C. § 523(a) (6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity...."T]he term "willful and malicious" in § 523(a)(6) means an act intentionally committed, without just cause or excuse, in conscious disregard of one's duty and that necessarily produces an injury. *Printy v. Dean Witter Reynolds, Inc.,* 110 F.3d 853, 859 (1st Cir. 1997).

"Willfulness" requires a showing of intent to injure or at least of intent to do an act which the debtor is substantially certain will lead to the injury in question. "Malice" requires the injury to have been "wrongful," "without just cause or excuse," and "committed in conscious disregard of one's duties." Malice thus has both objective and subjective elements: the injury must have been objectively wrongful or lacking in just cause or excuse; and the debtor must have inflicted the injury in "conscious disregard" of her duties, meaning that she has to have been aware that the act was wrongful or lacking in just cause or excuse. *In re O'Donnell*, 523 B.R. 308, 323 (Bankr. D. Mass. 2014) (internal citations omitted).

The Complaint, at ¶¶ 13-18 alleges, among other things, that Stepanian willfully, deliberately and intentionally … acted in conscious disregard of his duties giving rise to the violation of M.G.L. chapter 93A and consequently the assessment of $1,828,587.51 in attorneys' fees. Complaint at ¶ 17.

*In re Swasey*, 488 B.R. 22, (Bankr. D. Mass. 2013) a case cited by the Defendant is inapposite. The plaintiff in *Swasey*, sought to prevail on a motion for summary judgment by arguing that the willful and malicious injury elements of 11 U.S.C. § 523(a) (6) could be established through the application of collateral estoppel to a trial court judgment for violation of M.G.L. c. 93A. *Id.* at 31-32. However, the Bankruptcy Court, in denying plaintiff's motion for summary judgment, ruled that the application of collateral estoppel for purposes of 11 U.S.C. § 523(a) (6) was unwarranted, as the underlying 93A violation-a breach of contract action involving bad faith- did not involve an intentional tort. *Id.* at 45-46.

In this matter, the intentional tort elements necessary to maintain an action under 11 U.S.C. § 523(a) (6) have been sufficiently pled and the motion should be denied.

## II. Award Of Attorneys' Fees Is Indebtedness

Defendant incorrectly argues that there is no indebtedness other than to Plaintiff-trustee and Plaintiff-lawyers and therefore the Complaint should be dismissed as to the other Plaintiffs. Defendant fails to acknowledge the significance of an award of attorneys' fees under 93A.

Attorneys' fees awarded pursuant to 93A are an award to the party plaintiff. Chapter 93A is unique because "it mandates an award of attorney's fees to a prevailing party even if quantifiable damages are lacking." *Drywall Systems, Inc. v. ZVI Constr. Co., Inc.,* 435 Mass. 664, 672 (2002). *See Barron v. Fid. Magellan Fund*, 57 Mass. App. Ct. 507, 517, 784, N.E. 2d 634, 642 (2003) (holding attorneys' fees constitute a separate form of relief under 93A distinct from the award of damages).

Defendant is indebted to all Plaintiff including Plaintiffs Porter, Stoltz, Batiste and PBS.

16

## CONCLUSION

For all the reasons stated above, Debtor's Motion to Dismiss should be denied. In the event the Court grants Debtor's Motion in full or in part, Plaintiffs request that any order of dismissal be without prejudice.

> RESPECTFULLY SUBMITTED,
> By their attorneys,
>
> /S/ James L. O'Connor, Jr., Esq.
> David M. Nickless, Esq.
> James L. O'Connor, Jr., Esq.
> 625 Main Street
> Fitchburg, MA 01420
> 978-342-4590
> dnickless.nandp@verizon.net
> joconnor.nandp@verizon.net

## CERTIFICATE OF SERVICE

I, James L. O'Connor, Jr., do hereby certify that I will immediately upon receipt of the notice of electronic service, serve a copy of the within pleading by mailing the same to any of the parties listed below not noted as having received electronic service.

| | |
|---|---|
| United States Trustee | David J. Reier, Esq. |
| 5 Post Office Square | Adam J. Ruttenberg, Esq. |
| Boston, MA 02109 | Posternak Blankstein & Lund LLP |
| *Via ECF* | Prudential Tower |
| | 800 Boylston Street |
| | Boston, MA 02199-8004 |
| | *Via ECF* |

Date: September 15, 2015                    /S/   James L. O'Connor, Jr.
                                            James L. O'Connor, Jr.